IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Willie N. Moore, | ) | C/A No. 0:15-425-MGL-PJG |
|           Plaintiff, | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | ) | |
|           Defendant. | ) | |

This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.). The plaintiff, Willie N. Moore, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

Under 42 U.S.C. § 423(d)(1)(A), (d)(5) and § 1382c(a)(3)(H)(i), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R.

PJG

§§ 404.1505(a), 416.905(a); see also Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. §§ 404.1520(h), 416.920(h).



obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

### ADMINISTRATIVE PROCEEDINGS

In August 2011, Moore applied for DIB and SSI, alleging disability beginning August 1, 2011. Moore's applications were denied initially and upon reconsideration, and he requested a hearing before an ALJ. A hearing was held on July 8, 2013 at which Moore, who was represented by F.G. Delleney, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on October 18, 2013 concluding that Moore was not disabled. (Tr. 11-22.)

Moore was born in 1959 and was fifty-two years old at the time of his alleged disability onset date. (Tr. 20, 173.) He has a high school education and has past relevant work experience as a maintenance worker. (Tr. 225.) Moore alleged disability due to back problems. (Tr. 224.)

In applying the five-step sequential process, the ALJ found that Moore had not engaged in substantial gainful activity since August 1, 2011—his alleged onset date. The ALJ also determined that Moore's degenerative disc disease and status post surgery L3-4 and L4-5 were severe impairments. However, the ALJ found that Moore did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Moore retained the residual functional capacity to

> perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except: he is limited to only frequent overhead reaching bilaterally; he is limited to only frequent climbing of ramps and stairs; he is limited to only frequent stooping and balancing; he is limited to only occasional kneeling; he is restricted from any crawling, crouching, or climbing of ladders, ropes or scaffolds, and from working at unprotected heights or around dangerous machinery.



(Tr. 14.) The ALJ found that Moore was unable to perform any past relevant work, but that considering Moore's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Moore could perform. Therefore, the ALJ found that Moore was not disabled from August 1, 2011 through the date of her decision.

The Appeals Council denied Moore's request for review on December 3, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.



## ISSUES

Moore raises the following issues for this judicial review:

Issue 1      Residual Functional Capacity. The RFC assessment must be a reasoned assessment of all of the relevant evidence. The ALJ here failed to include significant limitations resulting from [Moore's] impairments and failed [to] provide an adequate discussion rejecting those limitations. Can a decision based upon an incomplete and inaccurate assessment of a claimant's RFC be supported by substantial evidence?

Issue 2      Credibility determination. In assessing a claimant's credibility the ALJ's decision must contain specific reasons for her finding, supported by the evidence in the case record. When the ALJ fails to provide specific reasons for her credibility determination, can her decision be based on substantial evidence?

(Pl.'s Br., ECF No. 14.)

## DISCUSSION

**A.     Residual Functional Capacity Assessment**

A claimant's residual functional capacity is "the most [a claimant] can still do despite [his] limitations" and is determined by assessing all of the relevant evidence in the case record. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing residual functional capacity, an ALJ should scrutinize "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Social Security Ruling 96-8p further requires an ALJ to reference the evidence supporting her conclusions with respect to a claimant's residual functional capacity.

Moore submits that the ALJ erred in failing to properly evaluate Moore's cervical and shoulder impairments. Moore acknowledges that although these impairments were not discussed at Step Two of the sequential process, the ALJ stated that Moore testified to head, neck, and shoulder pain; that Moore was scheduled to see a physician for his neck a few days after the hearing; that



Moore had been prescribed medication for his neck; and that at a February 2013 visit with his family doctor, it was noted that Moore had "had 'severe' left shoulder crepitus and painful range of motion, and 'mild' crepitus in his right shoulder." (Tr. 19.) Moore argues that in determining his residual functional capacity, the ALJ assigned great weight to opinions of Moore's orthopedic specialist (Dr. Craig Brigham) and the nonexamining state agency physicians; however, these sources did not evaluate Moore's neck or shoulder impairment or have the records from Moore's family physician (Dr. Jacques Days) which post-date the opinion evidence and include findings relating to these impairments. Moore points to records from Dr. Days dated January 2012 documenting pain in a radicular pattern down the left leg, tenderness in the lumbar paraspinal muscles, positive straight leg raises, an antalgic gait, and sciatica (Tr. 377-80), and to subsequent treatment records from Dr. Days through July 2012 that continue to include many of these findings. (Tr. 425-26, 427-28, 432-33, 435-36, 437-39.) However, the ALJ specifically mentioned these records as well as others in determining Moore's residual functional capacity.

      Thus, although Moore may dispute the ALJ's ultimate conclusions and findings from these records, it is clear from the ALJ's opinion that she considered limitations associated with Moore's alleged cervical and shoulder impairments in formulating Moore's residual functional capacity. Notably, the record does not contain any opinion evidence following the opinions of Moore's orthopedic specialist and the state agency reviewers or treatment records suggesting additional functional limitations from those imposed by the ALJ. In fact, the ALJ made this observation and further observed that, after the opinions were issued, a treatment record stated that "the claimant had 'severe' left shoulder crepitus and painful range of motion, and 'mild' crepitus in his right shoulder." Therefore, the ALJ "imposed additional limitations on the claimant's use of his upper extremities



for overhead reaching." (Tr. 20.) To the extent that Moore's argument that the residual functional capacity assessment is unsupported based on Moore's testimony as to his limitations, for the reasons discussed below, Moore has failed to demonstrate any error in ALJ's credibility analysis. Therefore, although Moore may be able to point to selective records in support of his position, the court finds that Moore has failed to demonstrate any error by the ALJ or that the ALJ's residual functional capacity assessment is unsupported by substantial evidence.

**B.     Credibility**

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). It appears that in this matter only the second step is at issue,[2] during which the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects [his] ability to work." Id. In making these determinations, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. "[A]llegations concerning the intensity and persistence of pain or other symptoms may not be disregarded *solely* because they are not substantiated by objective medical evidence." Id., at *6 (emphasis added). "This is not to say, however, that objective medical evidence and other objective

---

[2] The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." Craig, 76 F.3d at 594 (internal quotation omitted).



evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Craig, 76 F.3d at 595. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges []he suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)     Your daily activities;
(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;
(iii)   Precipitating and aggravating factors;
(iv)    The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v)     Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi)    Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii)   Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

In this case, the ALJ summarized in detail Moore's testimony, which included allegations of disabling symptoms from his back, neck, and shoulder. (Tr. 15-17.) The ALJ found that Moore's "statements concerning the intensity, persistence and limiting effects of these symptoms are only partially credible for the reasons explained in this decision." (Tr. 17.) In support of this finding, the ALJ first noted that Moore

> has a solid and consistent earnings history, which does lend his statements about his condition some credibility. He has also undergone two back surgeries, which certainly suggests that the symptoms he experienced initially were genuine. While



that fact would normally weigh in the claimant's favor, it is offset by the fact that the record reflects that the surgery was generally successful in relieving his symptoms.

(Id.)

The ALJ further found that in October 2011, after Moore's second surgery, and in December 2011 Moore returned to his surgeon, Dr. Craig Brigham. The ALJ observed that Dr. Brigham's records indicated that in October 2011,

> [a]lthough [Moore] was "very discouraged" because he had no income coming in and could not pay his rent Dr. Brigham noted the claimant was "doing well["] with physical therapy, but continuing to have "some residual symptoms" in both the left L3 and L5 dermatome of the left leg[.] His physical examination revealed no motor deficits in his lower extremities, and x-rays showed "good" position of his hardware, and correction of asymmetrical collapse and graft position. Dr. Brigham informed the claimant that he needed to look into his resources, and that he would "be happy" to write letters to his employers stating that the claimant had "full intention and will be capable of returning to all activities without restriction despite his fusion." Dr. Brigham advised the claimant that he did not think that he would meet the criteria to be eligible for Social Security Disability benefits. (Ex 6F/4)
>
> In December 2011, the claimant returned to see Dr. Brigham. He reported that he was experiencing bilateral hip pain, greater on the left, and left leg and foot numbness. He said he had fallen seven to eight times secondary to leg weakness. Dr. Brigham noted the claimant was three months post-operative, and that he was "still having lots of complaints that are difficult to explain." He reported having back pain, but also leg pain, but that his pain was not in a specific dermatomal pattern. The claimant said his legs would "just give way." On examination, Dr. Brigham noted the claimant exhibited no motor or sensory reflex abnormality in his lower extremities, and that x-rays showed that his fusion mass was "consolidating nicely." Dr. Brigham advised the claimant that he believed the claimant's symptoms simply represented "an adaptation of having a fusion." Dr. Brigham also expressed his opinion that the claimant was having "some work disability issues that (were) coloring his postoperative course." He advised the claimant that a two-level fusion of the lumbar spine would not gain him permanent total disability, but the claimant insisted he did not feel ready to return to work. Dr. Brigham also noted the claimant was "getting narcotics from someone else who has been taking them," and he had "a long talk" with him about narcotics and the concept of hyperalgesia and why it was

> "a bad thing to continue to take narcotics" three months after this type of fusion. (Ex 7F/4-5)

(Tr. 17-18.)

The ALJ stated that Moore was discharged from physical therapy in January 2012, at which time Moore reported he was 50% better but he was still experiencing leg and back pain. The therapist indicated that Moore "had tolerated therapy with only 'mild' complaints of pain and difficulty, and that the claimant had 'tight hamstrings.' [The therapist] felt [Moore's] rehabilitation prognosis was 'fair,' and he recommended that the claimant continue with rehabilitation therapy and a home exercise program." (Tr. 18.)

The ALJ found that Moore's testimony that he still used a cane that was prescribed after his surgery and continued to experience functional difficulties was unsupported by more recent evidence in the record, citing records reflecting the establishment of care with Dr. Jacques Days, a family physician, in January 2012 and treatment notes over the following months. Specifically, the ALJ observed that these records reflected that Moore reported pain in his back, leg, right knee, and shoulder and that the records indicated that Moore had tender lumbar paraspinous muscles and spine, pain with flexion and extension, positive straight leg raise on the left, and no ataxia and normal balance, although Moore had an antalgic gait. Dr. Days made no mention of Moore needing or using a cane for ambulation. The ALJ continued that "[a]lthough medical evidence reflects complaints of some falls in the period following his last surgery, no mention is made in the record of the claimant experiencing any recent falls." (Id.) Thus, the ALJ did not find "sufficient evidence demonstrating that the claimant's cane is now medically necessary for ambulation." (Id.) In July 2012, the ALJ observed that in addition to the above findings, Dr. Days's treatment notes found Moore "exhibited

tenderness in the subacromial region and 'popping' with passive range of motion in his shoulders. The claimant was alert and oriented, with no focal signs. His balance was 'normal,' although he had an antalgic gait." (Tr. 19.) The ALJ again observed that "no mention was made of [Moore] needing or utilizing a cane for ambulation." (Id.)

The ALJ observed that Moore did not return for treatment until January 2013, at which time, Moore reported kidney pain and questioned whether he had a kidney infection. The ALJ stated that Moore indicated that "he had also recently started exercising, and wondered whether this might be the cause of his pain." (Id.) The ALJ stated that examination revealed that Moore's "spine was positive for posterior tenderness, paravertebral muscle spasm, and bilateral lumbosacral tenderness;" Moore's extremities had no edema; and Moore was alert and oriented times three. (Id.) The ALJ found that notes indicated that Moore's balance and gait were intact, and no mention was made of Moore needing or utilizing an assistive devise for ambulation. The examiner[3] opined that Moore's back pain was caused by his working out.

The ALJ also found that in February 2013, Moore returned for followup of his hypertension and diabetes. The ALJ stated that Moore also complained of chronic back pain and pain in multiple joints and examination notes indicated that Moore was well nourished and well developed, and in no acute distress. The treatment record also revealed that Moore had severe left shoulder crepitus and painful range of motion, mild crepitus in his right shoulder, no edema in his extremities, and intact balance and gait. The ALJ stated that Moore was referred to an orthopedic specialist for

---

[3] April Logan, a physician's assistant, examined Moore and the visit details were reviewed and approved by a supervising provider, Dr. Julia E. Yaraei. (Tr. 449-52.)



evaluation of his shoulder pain and advised to return in three months for followup.[4] The ALJ specifically observed that "[t]here is no evidence in the record that [Moore] followed up on this orthopedic referral, although he testified that he did have an appointment a few days after the hearing for evaluation of his complaints of ongoing neck pain." (Tr. 19.)

Finally, the ALJ stated that in May 2013, Moore returned for followup of his diabetes, hypertension, and hyperlipidemia and Moore again complained of back pain, joint pain, and neck pain. The treatment records revealed that Moore was well-nourished, well-developed, and in no acute distress. The ALJ stated that the records indicated "[p]alpitation of his neck elicited tenderness; palpitation of his shoulders revealed bilateral tenderness along the muscles of his neck and shoulders." (Id.) They also indicated that Moore's gait was normal, his balance was intact, and he had no edema in his extremities. Further, the ALJ observed that Logan advised Moore that "his labs were 'so good' that he could wait for six months before returning for a follow up appointment, but [Moore] told her that he did not 'feel comfortable' going that long without follow up, and wanted to return in three months." (Id.)

Moore challenges some of the reasons mentioned by the ALJ. Specifically, Moore argues that evidence demonstrating that he benefitted from back surgery does not rendered his later reported symptoms unsupported, pointing to reports of tenderness or pain in his back, head, neck, and shoulder; continued prescriptions for narcotic medication; and a referral for an orthopedic consultation. Moore argues that Dr. Brigham's opinions are not inconsistent with symptoms and findings that developed after Dr. Brigham released Moore from his care, many of which related to

---

[4] Logan again was the physician assistant that examined Moore and the visit details were reviewed and approved by supervising provider, Dr. Lalonda M. Graham. (Tr. 453-56.)



other areas of Moore's body. Moore also points out that the issue of disability is an opinion reserved for the Commissioner, noting that the Medical Vocational Guidelines would direct a finding of disability if Moore were limited to sedentary work. Moore also argues that silence in his records regarding use of a cane does not make his testimony in that regard incredible. Moore argues that no provider stated that continued use of the cane was unreasonable and that treatment records reflect Moore's reports that his legs give way at times. Finally, Moore argues that relying on the lack of evidence in the record to demonstrate that Moore ever followed up on the orthopedic referral as a basis to discount Moore's credibility was unreasonable. Moore points to objective findings leading to the referral, continued prescriptions for narcotic pain medication, and Moore's testimony that he had an appointment after the hearing. Based on the foregoing, Moore argues that the ALJ's credibility analysis is conclusory and that she failed to point to specific evidence supporting her conclusions.

Upon review of the records as a whole and the parties' briefs, the court finds that Moore has failed to demonstrate that the ALJ's determination that Moore was only partially credible is unsupported or controlled by an error of law. As an initial matter, much of the evidence to which Moore directs the court in arguing that the ALJ's credibility analysis was unsupported was specifically discussed and evaluated by the ALJ. As stated above, it the ALJ's duty to weigh credibility. See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"). Moreover, the ALJ's decision reflects that she considered the relevant factors in weighing Moore's credibility. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Further, even if the court were to agree with Moore on some of his challenges, the court finds that Moore has failed

to demonstrate that the ALJ's credibility analysis as a whole is unsupported by substantial evidence or controlled by an error of law.  See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (noting that the absence of ongoing medical treatment can discredit a claimant's allegations); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (*per curiam*) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints); Blalock, 483 F.2d at 775 (indicating that even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence).

## RECOMMENDATION

For the foregoing reasons, the court finds that Moore has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

March 28, 2016                                                                      Paige J. Gossett
Columbia, South Carolina                                          UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"  Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).